UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

MAXWELL MCCATTY,

    *Plaintiff*,

    v.

STALLION EXPRESS, LLC, and
PHARMSCRIPT LLC,

    *Defendants*.

Civil No. 24-CV-10224-MRG

**MEMORANDUM AND ORDER**

**GUZMAN, J.**

Plaintiff Maxwell McCatty ("McCatty") brought this action against Defendants Stallion Express, LLC ("Stallion") and PharmScript, LLC ("PharmScript") alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, and various Massachusetts wage and hour laws based on his alleged misclassification as an independent contractor. On March 14, 2025, Magistrate Judge David H. Hennessy issued a Report and Recommendation ("R&R"), [ECF No. 48], recommending that PharmScript's motion to dismiss, [ECF No. 25], be allowed. Plaintiff has filed objections to the R&R. [ECF No. 51]. For the reasons that follow, the court **ADOPTS** the Magistrate Judge's recommendation.

## I.    BACKGROUND

The factual and procedural background of this case is thoroughly set forth in the Magistrate Judge's R&R and need not be repeated here in full. In summary, McCatty worked as a courier for Stallion until approximately August 2022. Stallion had entered into a Transportation Services

1

Agreement ("TSA") with PharmScript, pursuant to which Stallion provided pharmaceutical courier services for PharmScript's Massachusetts location. McCatty alleges that both Stallion and PharmScript were his joint employers and misclassified him as an independent contractor in violation of the FLSA and Massachusetts wage laws.

On March 12, 2025, the Magistrate Judge granted Stallion's motion to dismiss and compel individual arbitration. [ECF No. 47]. On March 14, 2025, the Magistrate Judge issued the R&R recommending that PharmScript's motion to dismiss be granted on the grounds that McCatty failed to plausibly allege that PharmScript was his joint employer under the four-factor test adopted by the First Circuit in Baystate Alternative Staffing v. Herman, 163 F.3d 668, 675 (1st Cir. 1998). [ECF No. 48]. McCatty timely filed objections to the R&R on March 28, 2025. [ECF No. 51].

## II.    LEGAL STANDARDS

### A.  Review of a Magistrate Judge's Report and Recommendation

A U.S. District Judge may refer certain types of pending matters to a U.S. Magistrate Judge for an R&R. 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b)(1). Parties may file written objections to an R&R within fourteen days of its issuance. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(2). Objections containing arguments or referring to previously available evidence that were not raised before the U.S. Magistrate Judge are deemed waived. See Guzman-Ruiz v. Hernandez-Colon, 406 F.3d 31, 36 (1st Cir. 2005); Borden v. Sec'y of Health & Human Servs., 836 F.2d 4, 6 (1st Cir. 1987) (explaining that a party objecting to a report and recommendation is "not entitled to a *de novo* review of an argument never raised" before the magistrate). If a party lodges a proper objection, the U.S. District Judge must then make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(3). That said, R&R objections are not an appropriate vehicle

to rehash or relitigate the points considered and resolved by the U.S. Magistrate Judge. See, e.g., Arnsten v. Washington, No. C24-5511-BHS, 2024 U.S. Dist. LEXIS 181214, at *4 (W.D. Wash. Oct. 3, 2024) (citations omitted).[1] When conducting a *de novo* review, the U.S. District Judge may "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(3).

### B.  Motion to Dismiss

A complaint "must provide 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" Cardigan Mt. Sch. v. N.H. Ins. Co., 787 F.3d 82, 84 (1st Cir. 2015) (quoting Fed. R. Civ. P. 8(a)(2)). But under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a defendant may move to dismiss an action arguing that it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).

To survive a motion to dismiss, the complaint must state a claim that is plausible on its face. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). In other words, the "[f]actual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. at 555 (citations omitted). Dismissal is appropriate if the complaint fails to set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." Gagliardi v. Sullivan, 513 F.3d 301, 305 (1st Cir. 2008) (quoting Centro Medico del Turabo, Inc. v. Feliciano de Melecio, 406 F.3d 1, 6 (1st Cir. 2005)).

---

[1] Indeed, the clear error standard applies to such improper objections. See e.g., Miller v. Hamlett, No. 19-cv-11097, 2022 U.S. Dist. LEXIS 95013, at *5 (S.D.N.Y. May 26, 2022) ("The clear error standard also applies if a party's 'objections are improper—because they are 'conclusory,' 'general,' or 'simply rehash or reiterate the original briefs to the magistrate judge.'") (citations omitted).

On a motion to dismiss made pursuant to Rule 12(b)(6), the factual allegations in the complaint are accepted as true, and the Court draws "all reasonable inferences in favor of the plaintiff." Trans-Spec Truck Serv., Inc. v. Caterpillar Inc., 524 F.3d 315, 320 (1st Cir. 2008) (citing Garita Hotel Ltd. P'ship v. Ponce Fed. Bank, F.S.B., 958 F.2d 15, 17 (1st Cir. 1992)).

## III.    DISCUSSION

The FLSA defines "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee[.]" 29 U.S.C. § 203(d). This definition is to be construed broadly, and "the remedial purposes of the FLSA require courts to define 'employer' more broadly than the term would be interpreted in traditional common law applications." Baystate Alt. Staffing v. Herman, 163 F.3d 668, 675 (1st Cir. 1998). Consistent with this definition, the FLSA recognizes that "the employment relationship extends to circumstances where an employee is jointly employed by multiple employers." Hamilton v. Partners Healthcare Sys., Inc., 209 F. Supp. 3d 379, 390 (D. Mass. 2016) (citing Falk v. Brennan, 414 U.S. 190, 195 (1973)).

The First Circuit applies an "economic reality" test to determine the existence of an employment relationship under the FLSA. Chao v. Hotel Oasis, Inc., 493 F.3d 26, 33–34 (1st Cir. 2007). In the seminal case Baystate Alternative Staffing v. Herman, the First Circuit considered four factors to evaluate the "economic reality" between employees and putative joint employers. 163 F.3d 668, 675 (1st Cir. 1998). The factors evaluate "whether the alleged employer (1) had the power to hire and fire the employees; (2) supervised and controlled employee work schedules or conditions of employment; (3) determined the rate and method of payment; and (4) maintained employment records." Id. Neither the presence nor absence of evidence on any single factor is dispositive. Id. at 676 ("[I]t is the totality of the circumstances, and not any one factor, which determines whether a worker is the employee of a particular alleged employer."). The

Massachusetts Supreme Judicial Court has adopted the same test for analyzing joint employment under Massachusetts wage laws. See Jinks v. Credico (USA) LLC, 488 Mass. 691, 703 (2021).

McCatty objects to the Magistrate Judge's analysis of each of the four Baystate factors. Specifically, he argues that the Magistrate Judge: (1) erred in analyzing the first factor by construing the FAC too narrowly and drawing improper inferences adverse to McCatty; (2) erred in analyzing the second factor by disregarding allegations of direct control exercised by PharmScript over the couriers' employment conditions; (3) erred in analyzing the third factor by misconstruing the allegations regarding PharmScript's control over compensation; and (4) erred in analyzing the fourth factor by failing to draw reasonable inferences in McCatty's favor. [ECF No. 51 at 4-10]. Finally, McCatty argues that the Magistrate Judge improperly held him to a summary judgment standard rather than the appropriate motion to dismiss standard. [Id. at 9-10].

After careful review of the record, the Court finds that McCatty properly raised before the Magistrate Judge all of the arguments forming the basis for his objections. His opposition to PharmScript's motion to dismiss, [ECF No. 31], addressed each of the four Baystate factors and argued that his allegations were sufficient to state a claim that PharmScript was his joint employer. Therefore, the Court will conduct a *de novo* review of the portions of the R&R to which McCatty has objected.

### A. Power to Hire and Fire

The Magistrate Judge found that the first Baystate factor weighed against finding a joint employer relationship because McCatty's allegations demonstrated only that PharmScript imposed "minimal quality controls and safety measures" rather than exercising hiring and firing authority over the couriers. [ECF No. 48 at 7-8]. The R&R concluded that PharmScript's ability to instruct Stallion to terminate couriers who did not meet quality control standards was insufficient to

establish that PharmScript had the power to hire and fire. [Id. at 8]. McCatty objects that the Magistrate Judge read the First Amended Complaint ("FAC") too narrowly and drew inferences adverse to him. [ECF No. 51 at 5]. Upon *de novo* review, the Court finds that the allegations in the FAC, taken as true and with all reasonable inferences drawn in McCatty's favor, are insufficient to plausibly allege that PharmScript had the power to hire and fire the couriers.

The FAC acknowledges that "Stallion directly hires all couriers," [FAC, ECF No. 18 ¶ 36], but alleges that "PharmScript indirectly dictates which Couriers Stallion will/will not hire by setting the parameters the Couriers must meet to be hired," [Id.] These parameters include requirements that couriers be "appropriately licensed, drug tested, background checked, and have a suitable driving history." [Id. ¶ 27(j)]. Such requirements amount to "minimal quality controls and safety measures" rather than meaningful control over the hiring and firing process. See Fine v. Guardian Life Ins. Co. of Am., No. 3:19-cv-30067-KAR, 2021 WL 916270, at *6 (D. Mass. Mar. 10, 2021) (noting that "allegations that [defendant] 'hired' Plaintiff and that [defendants] 'terminated' his employment are the kind of conclusory allegations that a court is directed to disregard on a motion to dismiss"). Indeed, courts in the First Circuit have held that such requirements do not establish the power to hire and fire for purposes of joint employer liability. E.g., Sigui v. M&M Communs., Inc., 310 F. Supp. 3d 313, 330 (D.R.I. 2018) (concluding that similar requirements "amount to minimal quality controls and safety measures and do not indicate that [the putative joint employer] controls which applicants are hired or how many").

The conclusory allegation that PharmScript "directly caused/instructed Stallion to terminate Couriers," [FAC ¶ 38], lacks any supporting factual allegations and is contradicted by the express terms of the TSA, which states that PharmScript "has no[] control, right of supervision or termination over Stallion's personnel providing Services under this Agreement," [ECF No. 26-2

at 8]. McCatty contends that "PharmScript has directly caused/instructed Stallion to terminate Couriers." [FAC ¶ 38]. However, this allegation is made "upon information and belief" without any supporting factual detail. [Id.] While a court must accept well-pleaded factual allegations as true on a motion to dismiss, it need not credit "conclusory statements" or "naked assertion[s]" devoid of "further factual enhancement." Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557). Indeed, aside from the quality and safety parameters, the FAC contains no allegations of specific instances where PharmScript rejected qualified couriers or required hiring of particular individuals. Moreover, there is no factual basis to infer that PharmScript could override Stallion's decisions. [See ECF No. 26-2 at 8]. McCatty's characterization of PharmScript's and Stallion's relationship as a "partnership" does not, without more, support the inference that PharmScript possessed any power to unilaterally hire or fire couriers. This factor weighs against finding PharmScript to be a joint employer.

**B. Supervision and Control of Work Schedules and Conditions of Employment**

The Magistrate Judge found that the second Baystate factor also weighed against finding a joint employer relationship, concluding that the requirements imposed by PharmScript were "quality control procedures" that ultimately stemmed from "the nature of PharmScript's business and the need to provide reliable and safe service to their customers" rather than from the nature of an employer-employee relationship. [ECF No. 48 at 9-14 (citing Jacobson v. Comcast Corp., 740 F. Supp. 2d 683, 690-91 (D. Md. 2010))]. McCatty objects that the Magistrate Judge erred by disregarding allegations that PharmScript exercised direct control over the courier's employment conditions, including specifying delivery schedules and requiring couriers to work overnight shifts or remain at PharmScript's premises for extended periods. [ECF No. 51 at 6-7]. Upon *de novo* review, the Court agrees with the Magistrate Judge's conclusion that McCatty has failed to allege

facts that plausibly establish that PharmScript supervised and controlled courier's work schedules and conditions of employment in a manner indicative of an employer-employee relationship.

The FAC alleges that PharmScript directly instructed couriers to add stops to their routes, complete routes in a different order, return products at certain times, and remain on premises until products were ready for pickup. [FAC ¶ 28]. Nevertheless, "supervision with respect to contractual warranties of quality and time of delivery has no bearing on the joint employment inquiry, as such supervision is perfectly consistent with a typical, legitimate subcontracting arrangement." Zheng v. Liberty Apparel Co. Inc., 355 F.3d 61, 75 (2d Cir. 2003) (citing Moreau v. Air France, 343 F.3d 1179, 1188 (9th Cir. 2003)); Franco v. Roman's Com. Cleaning & Prop. Maint., Inc., No. 16-225 WES, 2018 WL 2447790, at *4 (D.R.I. May 31, 2018) (same). While McCatty alleges that PharmScript sometimes instructed couriers to add stops, complete routes in a different order, or remain at PharmScript locations until products were ready, these allegations reflect the type of oversight consistent with a legitimate contractor-subcontractor relationship.

"Generally, a joint-employment relationship requires the putative joint employer to control the day-to-day aspects of the putative employee, but '[t]he nature of the control distinguishes employment and contractor relationships[,]' even if there is a high level of control and supervision." Franco, 2018 WL 2447790, at *4; accord Jacobson, 740 F. Supp. 2d at 690-91 ("A high level of supervision and control is not an automatic trigger for joint employment. The nature of the control distinguishes employment and contractor relationships."). Here, the requirements set forth in the TSA—such as that couriers obtain signed electronic receipts, provide same-day delivery of return items, submit to real-time tracking, comply with temperature and handling specifications, wear standardized uniforms, and receive HIPAA training—all stem from the nature of PharmScript's pharmaceutical business and the need to ensure compliance with regulatory

requirements, rather than from the nature of the relationship between PharmScript and the couriers. See Godlewska v. HDA, 916 F. Supp. 2d 246, 259-61 (E.D.N.Y. 2013) (finding that putative employer did not exercise day-to-day control in nursing context because the purpose of the control was to ensure compliance with the law or protect clients' safety).  McCatty's allegations about PharmScript occasionally instructing couriers to add stops or wait for products similarly do not establish control over work schedules in the manner of an employer. See Sigui, 310 F. Supp. 3d at 331 (finding that control over schedules was unsupported where plaintiffs reported to defendant's facilities each morning to receive work orders from the putative employer, who could also modify work orders). These instructions relate to PharmScript's operational needs in its pharmacy business rather than control over the employment relationship itself. See Franco, 2018 WL 2447790, at *4; see also Jacobson, 740 F. Supp. 2d at 690-91. The allegations show, at most, that PharmScript exercised the type of oversight that would be expected in any client-contractor relationship involving time-sensitive deliveries of regulated pharmaceutical products. Moreover, McCatty does not allege that PharmScript assigned specific couriers to certain routes or certain shifts. The fact that PharmScript occasionally required couriers to work overnight or wait for products does not establish the type of pervasive, day-to-day control that would indicate an employer-employee relationship. See Sigui, 310 F. Supp. 3d at 331-32.

### C. Rate and Method of Payment

The Magistrate Judge found that the third Baystate factor weighed against finding a joint employer relationship, concluding that McCatty had merely alleged that PharmScript influenced the courier's compensation by virtue of its payment structure with Stallion. [ECF No. 48 at 14-15]. The R&R determined that this arrangement was typical of any client/independent contractor relationship. [Id. at 16]. McCatty objects that the Magistrate Judge misconstrued his allegations,

arguing that he did not allege that PharmScript controlled the courier's pay merely because Stallion passed along PharmScript's per-mile-per-delivery compensation structure. [ECF No. 51 at 8]. Rather, McCatty argues that the FAC alleges that PharmScript actually developed the payment structure used by Stallion to compensate the couriers. [Id. at 8-9]. Upon *de novo* review, the Court finds that McCatty's allegations are insufficient to state a plausible claim that PharmScript determined the rate and method of payment for the couriers.

The FAC alleges, "upon information and belief," that "PharmScript has developed the payment structure utilized by Stallion to compensate the Couriers" and "developed a compensation structure pursuant to which all Couriers were paid a certain amount per mile plus an additional amount per delivery." [FAC ¶¶ 39-40]. These allegations, without more, are conclusory and lack factual support. The TSA provides that PharmScript would pay Stallion based on mileage and deliveries, but it does not specify how Stallion would compensate its couriers. Moreover, the TSA explicitly states that "Stallion shall be responsible for the full payment of all wages, salaries, or other compensation to its employees." [ECF No. 26-2 at 8]. The fact that Stallion may have chosen to pay its couriers using the same metric by which PharmScript paid Stallion does not establish that PharmScript determined the couriers' rate and method of payment. See Jacobson, 740 F. Supp. 2d at 692 ("An employee's income, received from its direct employer, will always be 'determine[d] and influence[d]' by what a contractor decides to pay the direct employer for services rendered by the employee.").

The FAC also alleges that costs incurred by Stallion to comply with PharmScript's requirements are passed on to couriers as deductions from their compensation. [FAC ¶ 43]. But the fact that Stallion may have passed along certain costs to its couriers does not implicate PharmScript in determining their compensation. See Valle v. Ceres Env't Servs., Inc., No. 21-12020, 2022 WL

1667015, at *6 (11th Cir. May 25, 2022) ("[I]t is not enough for this factor to support a finding of joint employment if the employee is merely paid by its employer from funds paid to the employer by the purported joint employer as part of a contract to deliver services." (citing Aimable v. Long & Scott Farms, 20 F.3d 434, 441 (11th Cir. 1994)).

### D. Maintenance of Employment Records

The Magistrate Judge found that the fourth Baystate factor also weighed against finding a joint employer relationship, concluding that the records maintained by PharmScript were not "employment records" but rather records necessary to determine the miles and stops completed by the couriers for billing purposes. [ECF No. 48 at 16-17]. McCatty objects that the Magistrate Judge failed to draw reasonable inferences in his favor, arguing that the only permissible inference at the motion to dismiss stage is that PharmScript used these records to control the courier's day-to-day employment. [ECF No. 51 at 9]. Upon *de novo* review, the Court concludes that McCatty's allegations regarding PharmScript's maintenance of records are insufficient to establish this factor in favor of finding a joint employer relationship. While the Court must draw all reasonable inferences in the plaintiff's favor at the motion to dismiss stage, this does not require the Court to draw unreasonable inferences or to accept legal conclusions couched as factual allegations. Guilfoile v. Shields, 913 F.3d 178, 186 (1st Cir. 2019) (explaining that on a motion to dismiss a court must "assume the truth of all well-pleaded facts and give the plaintiff the benefit of all reasonable inferences therefrom," but need not "draw unreasonable inferences or credit bald assertions [or] empty conclusions").

The FAC alleges that "PharmScript also maintains records showing miles driven by Couriers, and, in part, records showing hours worked by Couriers, which includes stop level detail in an excel file[] for all Couriers." [FAC ¶ 48]. This allegation is made "upon information and

11

belief" without any supporting factual detail. [Id.] Even accepting this allegation as true, the maintenance of such records is consistent with PharmScript's need to track deliveries for billing purposes pursuant to the TSA, to comply with regulatory requirements, and to ensure quality control. See Sigui, 310 F. Supp. 3d at 332 (holding that records maintained for quality control purposes or records containing information needed to make payments to direct employer and ensure customer safety do not constitute employment records); Franco, 2018 WL 2447790, at *5 (finding that records maintained "for quality-control purposes [is] a type of recordkeeping that does not suffice to show that [putative joint employer] controlled [p]laintiffs' employment"). As the Magistrate Judge correctly noted, "[t]o apply this formula [in the TSA], PharmScript would necessarily need to determine the miles and stops completed by the couriers." [ECF No. 48 at 17]. Given PharmScript's operation in a highly regulated pharmaceutical industry, it is entirely reasonable—indeed expected—that PharmScript would maintain records showing where controlled substances were sent, who delivered them, and when. See Sigui, 310 F. Supp. 3d at 332; see also Johnson v. Serenity Transp., Inc., No. 15-CV-02004-JSC, 2017 WL 1365112, at *33 (N.D. Cal. Apr. 14, 2017) ("Maintaining records for purposes of ensuring regulatory compliance or monitoring safety does not constitute maintenance of employment records to satisfy this . . . factor.").

McCatty's assertion that the only permissible inference is that PharmScript used these records to control the couriers' day-to-day employment is not supported by the factual allegations in the FAC. The allegation that PharmScript maintained records of miles driven and stops completed, without more, does not plausibly suggest that PharmScript exercised the type of control indicative of an employer-employee relationship. See Jacobson, 740 F. Supp. 2d at 692 ("Plaintiffs have presented no evidence to indicate that the maintenance of this type of information is used to

12

control a technician's day to day employment, or that [the putative joint employer] retains records for any purpose beyond quality control."). McCatty has not alleged that PharmScript maintained the types of records typically associated with an employment relationship, such as tax forms, time sheets, performance evaluations, or payroll records. See Franco, 2018 WL 2447790, at *5 (citing Jean-Louis v. Metro. Cable Commc'ns, Inc., 838 F. Supp. 2d 111, 130 (S.D.N.Y. 2011)). The mere maintenance of records showing miles driven and deliveries made does not suggest that PharmScript functioned as an employer of the couriers. PharmScript operated in a highly regulated pharmaceutical industry and needed to maintain records for compliance purposes showing where controlled substances were sent, who delivered them, and when. Such record-keeping requirements stem from regulatory compliance records rather than an employer-employee relationship.

### E. Totality of the Circumstances

Considering the totality of the circumstances and all four Baystate factors, the Court concludes that McCatty has failed to plausibly allege that PharmScript was his joint employer under the FLSA or Massachusetts law. While the FLSA's definition of "employer" is to be construed broadly, the allegations in the FAC, even when accepted as true and viewed in the light most favorable to McCatty, establish at most a typical client-contractor relationship between PharmScript and Stallion rather than an employment relationship between PharmScript and the couriers. The requirements and oversight that PharmScript exercised stemmed from "the nature of [its] business and the need to provide reliable service to [its] customers, not the nature of the relationship between [the couriers] and [PharmScript]." [ECF No. 48 at 14 (citing Jacobson, 740 F. Supp. 2d at 690-91)]. Such quality control measures are insufficient to establish joint employer status under the FLSA or Massachusetts law.

13

In his objections, McCatty argues that the Magistrate Judge "held Plaintiff to too high a standard when recommending the dismissal of his case" and that the Magistrate Judge "only compared Plaintiff's allegations to decisions rendered on a full factual record." [ECF No. 51 at 9-10]. While it is true that many of the cases cited in the R&R were decided at the summary judgment stage, the legal principles derived from those cases regarding what constitutes joint employment are equally applicable at the motion to dismiss stage. The question is whether McCatty has alleged facts that, if proven, would establish that he was "economically dependent" on PharmScript as required to state a viable claim. Based on the Court's *de novo* review, the Court concludes that he has not.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff's objections to the Magistrate Judge's Report and Recommendation are **<u>OVERRULED</u>**. The Report and Recommendation is **<u>ADOPTED</u>**, and Defendant PharmScript's motion to dismiss is **<u>ALLOWED</u>**.


**SO ORDERED.**


Dated: July 22, 2026                         */s/ Margaret R. Guzman*
                                                       Margaret R. Guzman
                                                       United States District Judge